UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MELVIN HOWARD,

                              Plaintiff.

          -v-

                                                    Case No. 02-CV-1731 (KMK)

CITY OF NEW YORK, NEW YORK CITY
DEPARTMENT OF CORRECTIONS,                          OPINION AND ORDER
CORRECTION OFFICER JOHN DOE #2,
CORRECTION OFFICER JOHN DOE #3,
SECURITY CAPTAIN JOHN DOE #1,
WARDEN JOHN DOE #4, CORRECTION
OFFICER JOHN DOE #5, CORRECTION
OFFICER JOHN DOE #6,

                              Defendants.

Appearances:

Melvin Howard
Malone, NY
*Pro Se Plaintiff*

Liora Jacobi, Esq.
New York City Corporation Counsel
New York, NY
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

          Melvin Howard, *pro se* Plaintiff, moves to amend his Complaint to (1) add Captain

Thompson to the caption of the Complaint, (2) substitute former Commissioner Bernard Kerik

for the New York City Department of Correctional Services ("DOCS"), and, (3) substitute actual

names for the various "John Doe" Defendants.[1]  Defendants oppose Plaintiff's Motion primarily

----

[1] During a conference on July 19, 2006, Plaintiff requested permission to submit additional authority to the Court regarding his Motion to Amend.  (Tr. 45, July 19, 2006)  The Court ordered him to submit a letter by August 9, 2006 either including additional authority or requesting an extension of time.  (Tr. 48-49, July 19, 2006)  To date, the Court has not received

on the grounds that Plaintiff's claims are time barred and futile.  For the reasons stated herein,

Plaintiff's Motion is denied in part and granted in part.

## I.  Background

Familiarity with the facts is presumed.  In short, Plaintiff's claims stem from an alleged

attack on Plaintiff by another inmate on February 7, 1999.  Plaintiff claims that the "high

classification" unit (*i.e.*, the unit housing inmates known to have violent tendencies) in which he

was housed was inadequately staffed to prevent inmate attacks and that he was denied adequate

medical care in the days following the February 1999 incident.

Plaintiff named John Does #1-6 in his original Complaint.  He initially expressed an

interest in amending his complaint to Judge George B. Daniels, who was then presiding over the

case.  Judge Daniels instructed Plaintiff to amend his Complaint within thirty days of receiving

the information from the City of New York ("the City") identifying the John Does.  On

September 30, 2003, Judge Daniels referred this case to Magistrate Judge Debra C. Freeman for

general pretrial matters.  On October 31, 2003, Defendants sent a letter to Plaintiff informing him

that the remaining logbooks which could identify the two as-yet unidentified Does (Does #5 and

#6) had been destroyed in a flood.  (Letter from Liora Jacobi, Esq., July 26, 2006 at 1 ("Jacobi

7/26/06 Letter"))  At a November 5, 2003 conference, Plaintiff stated to Magistrate Judge

Freeman that he had known the identity of the first three or four John Does for "a year and

change," and that he was waiting for the identity of the last two John Does.  (Tr. 12, Nov. 5,

2003)  At a later conference, the City confirmed that it had provided a witness report, an

infraction report, and "a few other documents which identified the correction officers who were

_____

such a letter from Plaintiff.

present at the time that this incident took place" to Howard on September 30, 2002.  (Tr. 8, Feb. 24, 2004)  Magistrate Judge Freeman urged Howard to substitute names "quickly" to avoid slowing the case down further.  She did not, however, specifically warn Plaintiff about a potential statute of limitations issue that may arise if he did not amend or set a deadline for amending.  (Tr. 12-13, Nov. 5, 2003)

At the November 5, 2003 conference, Magistrate Judge Freeman also raised the issue that Howard is an incarcerated *pro se* litigant who did not initially have the identity of the defendants, but who learned their identity through discovery produced by the City.  (Tr. 14, Nov. 5, 2003).  Magistrate Judge Freeman further stated that "if the motion is simply to replace John Does with the names of those John Does, and if the complaint made clear that John Doe number one is the officer on duty on such and such location on such and such a day or whatever, I would likely permit that type of amendment.  It should have been done already, but it hasn't been.  I would still likely permit it if there were really no surprises there."  (Tr. 15, Nov. 5, 2003)  Magistrate Judge Freeman ordered Plaintiff to mail a motion to amend his complaint (along with a motion to compel discovery) within two weeks of November 5, 2003.

On January 7, 2004, Magistrate Judge Freeman held a conference at which she stated that neither she nor Corporation Counsel had received either motion from Howard.  At that point, the motions were seven weeks late.  (Tr. 4, Jan. 7, 2004)  Howard explained that he had failed to submit the motions because he was working on his criminal case.  (Tr. 5, Jan. 7, 2004)  Magistrate Judge Freeman warned Plaintiff that she could deny the relief Howard was seeking as untimely under her November 5, 2003 Order because Howard was "not at liberty to simply ignore the deadline simply because of [his] own personal priorities, even if those priorities are

understandable." (Tr. 5, Jan. 7, 2004)

On April 8, 2004, Magistrate Judge Freeman held another conference. She informed Plaintiff she had still not received his motions. Howard explained that he did not have money to make copies of his papers. (Tr. 4, Apr. 8, 2004) Magistrate Judge Freeman then spoke with a counselor at the prison who stated that he would make the copies for Howard and mail the copies to the Court and to Corporation Counsel. (Tr. 8, Apr. 8, 2004) At that conference, Howard reiterated his demand for the names of the remaining two John Does. He also explained that Judge Daniels had given him permission to amend the complaint after he received the names of all John Does. (Tr. 10, Apr. 8, 2004) Magistrate Judge Freeman explained that her "usual practice when an amendment is merely to identif[y] John Does who are listed as such from the beginning," is to "allow the amendments unless there is some unusual circumstance not to." (Tr. 14, Apr. 8, 2004) She went on to say that "[i]t is also [her] usual practice to require the city to assist in identifying John Does." (Tr. 14, Apr. 8, 2004) Defendants' counsel informed the court that the documents which would permit the City to identify the two remaining John Does had, to her knowledge, been destroyed in a flood. (Tr. 15, Apr. 8, 2004) At the end of the conference, Defendants' counsel was ordered to send a letter to Plaintiff recounting the efforts she had made to identify the remaining John Does and specifying whether further information would be forthcoming or whether the documents had indeed been destroyed. (Tr. 19, Apr. 8, 2004) According to Magistrate Judge Freeman, to the extent that the City could not identify those officers, then Howard would have to proceed without them. (Tr. 17, Apr. 8, 2004) However, the letter counsel was to send to Plaintiff is not in the record and counsel was unable to locate it among her papers. (Jacobi 7/26/06 Letter 1)

4

On June 18, 2004, Magistrate Judge Freeman set a July 16, 2004 deadline for Howard to mail his motions to compel and to amend the complaint.  (Tr. 5, June 18, 2004)  In that reply, Howard was ordered to inform the court of whether and when Judge Daniels had issued an order pursuant to *Valentin v. Dinkins*, 121 F.3d 72, 76 (2d Cir. 1997) requiring the City to provide identifying information for the John Does.  (Tr. 8, June 18, 2004)  Howard was also ordered to provide the court with the date when he first learned the names that he had been seeking.  (Tr. 8, June 18, 2004)  The court never received that information.

At a September 21, 2004 conference, Magistrate Judge Freeman stated that she had provided Howard a two-week extension on his reply and that, as of the conference, she still had not received it.  Howard stated that he had been unable to complete the reply because of "some other events that occurred that [he] had to take care of," including the fact that he had been "stabbed 18 times."  (Tr. 3, Sept. 21, 2004)  Magistrate Judge Freeman stated that she would not give Howard any more extensions.  If she received Howard's reply before she decided the motions, she would consider it.  If not, she would decide the motions on the papers she had before her.  (Tr. 4-5, Sept. 21, 2004)

## II.  Discussion

### A.  Statute of Limitations

Defendants argue that Plaintiff's section 1983 and state law claims should be dismissed against the proposed Defendants because they were not commenced within the applicable statute of limitations.

Section 1983 itself provides no statute of limitations for courts to apply.  Instead, federal district courts "must 'borrow' the limitations period from the most appropriate or analogous state

statute." *Cole v. Miraflor*, No. 99 Civ. 977, 2001 WL 138765, at * 3 (S.D.N.Y. Feb. 19, 2001).

New York's three-year period for personal injury actions governs section 1983 actions in New

York State. *Id*. at *3 (citing *Owens v. Okure*, 488 U.S. 235, 249 (1989)). Federal law governs

the accrual of a section 1983 claim. *Id.* "Such claims accrue when the plaintiff knows or has

reason to know of the injury which is the basis of his action." *Id*. (citation omitted). Plaintiff's

state law claims are governed by New York General Municipal Law section 50-i(1)(c), which

provides that any tort claims against the City or its employees must be brought within one year

and ninety days of the alleged occurrence. *See* N.Y. Gen. Mun. Law § 50-i(1)(c).

Plaintiff contends that he was attacked by another inmate on February 7, 1999. In the

immediate days that followed, Howard contends that various prison officials denied him

adequate medical care. It appears that Howard's claim for failure to protect him from violence

and inadequate medical treatment accrued in early February 1999. Therefore, the limitations

period ran on Plaintiff's federal claims in early February 2002. Howard commenced this action

by submitting the Complaint and an Application to proceed *in forma pauperis* on January 25,

2002 – the date he handed the complaint to prison officials to be mailed. *See Noble v. Kelly*, 246

F.3d 93, 97 (2d Cir. 2001) ("[A] prisoner appearing *pro se* satisfies the time limit for filing a

notice of appeal if he delivers the notice to prison officials within the time specified.").

### 1.  State Law Claims

Defendants preserved the statute of limitations defense as to Plaintiff's state law claims

by raising it in their Answer. (Answer ¶ 103) ("This Court lacks jurisdiction of plaintiff's

pendent state claims, if any, due to his failure to comply with Section 50 of the New York

General Municipal Law.") "Although the invocation of the statute of limitations defense could

perhaps have been clearer," it was raised in the Answer, and therefore, not waived. *Patterson v. Balsamico*, 440 F.3d 104, 112 (2d Cir. 2006). The Complaint was filed after the one year and ninety day statute of limitations for his state law claims had expired. The one year and ninety day provision in N.Y. Gen. Mun. Law section 50-i(1)(c) is a statute of limitations, and therefore, subject to equitable tolling. *See Campbell v. City of New York*, 825 N.E.2d 121, 122 (N.Y. 2005). However, there is nothing in the pleadings or motion papers here to suggest that equitable tolling should apply here. Therefore, Plaintiff's state law claims are dismissed.[2] *See Santiago v. Newburgh Enlarged City Sch. Dist.*, 434 F. Supp. 2d 193, 197 (S.D.N.Y. 2006) ("[T]he burden rests with plaintiff to prove [his] entitlement to a toll . . . ."); *Anselmo v. Copertino*, 513 N.Y.S.2d 596, 597 (Sup. Ct. 1987) (dismissing complaint where process was served three days after statute of limitations expired).

## 2.  Federal Law Claims

Plaintiff's Complaint was filed within the statute of limitations for his section 1983 claim. When a plaintiff seeks to amend the complaint after the statute of limitations on his claims has run, Fed. R. Civ. P. 15(c) governs. The relevant portions of Rule 15(c) provide:

---

[2]Because Plaintiff's state law claims are time-barred, the Court need not address the question of whether Plaintiff was required to file a Notice of Claim against the City and the individual Defendants. However, it is worth noting that Plaintiff's state law claims against the City would also be barred because Plaintiff was required to file a Notice of Claim against the City and failed to do so. Additionally, not only are the state law claims against John Does #5 and #6 dismissed on statute of limitations grounds, but the Eighth Amendment claims are also dismissed. The City has represented that it has unsuccessfully attempted to identify John Does #5 and #6. (Jacobi 7/26/06 Letter 1) The logbooks identifying the officers on duty during the relevant periods were destroyed in a flood, and the City represents that there is no other way to determine the officers' identities. (*Id.*) Therefore, because Plaintiff cannot identify John Does #5 and #6, he cannot state an Eighth Amendment claim against them.

An amendment of a pleading relates back to the date of the original pleading when

\* \* \*

(2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, or

(3) the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and, within the period provided by Rule 4(m) for service of the summons and complaint, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) *knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party*.

Fed. R. Civ. P. 15(c) (emphasis added).

Petitioner must show that it was a mistake for him not to have named Captain Thompson, former Commissioner Kerik, and the names of the "John Does" in the caption of his original Complaint in order to satisfy federal relation back rules. Given that Plaintiff asserts allegations against Captain Thompson in paragraph eleven of his Complaint, it clearly was a mistake that he did not name him in the caption. Captain Thompson will not suffer any prejudice if the caption is amended as he is represented by Corporation Counsel who represents the other named Defendants and because the allegations in the body of the Complaint put him on notice of the action. *See Cianfrano v. Cables*, No. 88 Civ. 1238, 1989 WL 111022, at *2 (N.D.N.Y. Aug. 25, 1989) (permitting amendment of caption where new defendant was represented by same attorney and was "undoubtedly aware" of the action). Under the same rationale, Plaintiff is permitted to substitute Kerik for DOCS. DOCS is not a suable entity, *Echevarria v. Dep't of Corr. Servs.*, 48 F. Supp. 2d 388, 391 (S.D.N.Y. 1999) (recognizing that it is well settled that the New York City

DOCS is a non-suable entity), and therefore former Commissioner Kerik was mistakenly not named as a Defendant.  *See Soto v. Brooklyn Corr. Facility*, 80 F.3d 34 (2d Cir. 1996) (finding mistake where *pro se* plaintiff named the wrong parties as a result of "mistake as to technicalities of constitutional tort law").  Kerik was constructively aware of the suit against DOCS and that, absent a mistake by Plaintiff, he would have been named as a Defendant instead of DOCS. Therefore, Kerik will not suffer any prejudice if he is added to the Complaint because he is also represented by Corporation Counsel, who has already appeared on behalf of DOCS.

As for the unnamed "John Doe" defendants, "it is familiar law that 'John Doe' pleadings cannot be used to circumvent statutes of limitations because replacing a 'John Doe' with a named party in effect constitutes a change in the party sued."  *Barrow v. Wethersfield Police Dep't*, 66 F.3d 466, 468 (2d Cir. 1995) (quoting *Aslanidis v. United States Lines*, 7 F.3d 1067, 1075 (2d Cir. 1993)).  "Thus, 'such an amendment may only be accomplished when all of the specifications of Fed. R. Civ. P. 15(c) are met.'"  *Id.* (quoting *Aslanidis*, 7 F.3d at 1075).  The Second Circuit also has held that it is not a mistake to fail to name a defendant because the plaintiff did not know the identity of that Defendant.  In *Barrow*, the Second Circuit stated:

> We are compelled to agree with our sister circuits that Rule 15(c) does not allow an amended complaint adding new defendants to relate back if the newly-added defendants were not named originally because the plaintiff did not know their identities.  Rule 15(c) explicitly allows the relation back of an amendment due to a "mistake" concerning the identity of the parties (under certain circumstances), but the failure to identify individual defendants when the plaintiff knows that such defendants must be named cannot be characterized as a mistake.

*Id.*

9

Perhaps realizing that this inflexible rule may yield harsh results in *pro se* cases, the Second Circuit and several district courts have modified the rule.  However, none of these modifications is squarely applicable here.  In *Soto*, a *pro se* plaintiff sued the Brooklyn Correctional Facility, not realizing that it was not a proper party to the lawsuit.  80 F.3d at 36. The Court allowed the plaintiff's untimely amended complaint, which named individual defendants, to relate back to the original complaint because he "did not know that he needed to name individual defendants, and his failure to do so, under the circumstances of this case, can be characterized as a 'mistake' for the purposes of Rule 15(c)(3)."  *Id.* at 37.  While this exception permits Plaintiff to add Kerik as a Defendant, it does not apply to the John Doe Defendants, because the very fact that Howard included John Doe Defendants in his Complaint demonstrates that he knew individuals existed who would have to be named in the suit.

In *Byrd v. Abate*, 964 F. Supp. 140, 147 (S.D.N.Y. 1997), the court held that the Second Circuit's holding in *Barrow* regarding the "mistake" requirement of Rule 15(c)(3) does not apply when the defendants fail to respond until after the limitations period has expired to a plaintiff's demands for information that could identify the John Does named in the complaint.  *Byrd*, 964 F. Supp. at 145-46 ("The *Barrow* plaintiff disregarded an explicit direction from the court to obtain the officers' identities.  He failed to make any efforts to discover their names until well after the statute of limitations had run.  In contrast, Byrd made a series of efforts to obtain the identity of the individual officer . . . it was the defense, rather than the plaintiff, who failed to identify the individual defendant despite Byrd's requests for information.").  This exception only partially applies here because, although there is no dispute that the City provided the names of the first four John Does by September 30, 2002, the City did not provide the names of the two remaining

John Does.  The City claims it cannot provide their identities because the relevant documents were destroyed.  Yet, whatever may be said of the reasonableness of that reason for delay, Howard claims that he is not required to amend his Complaint until he has identifying information for all John Does.

In *Thomas v. Arevalo*, No. 95 Civ. 4704, 1998 WL 427623, at *14 (S.D.N.Y. July 28, 1998), the court held that where a *pro se* plaintiff relied on confusing orders of the court in deciding whether and when to amend the complaint, plaintiff's reliance constitutes a legal mistake for the purposes of Rule 15.  This exception applies to the first four John Does.  Howard explains that he was told to amend his complaint *after* he received the identities of all of the John Does – and because he still has not received the identities of two – he need not amend. Furthermore, the Magistrate Judge handling the matter at the time assured Howard on April 8, 2004 that it was her usual practice to permit substitutions for John Doe defendants by *pro se* litigants and was flexible in waiting for the papers to be mailed.  Both Judge Daniels and Magistrate Judge Freeman were solicitous of Howard's status as an incarcerated *pro se* litigant and were not too stingy with deadlines.  It was not unreasonable for Howard to believe that he could wait to submit his Motion to Amend without negative consequences.  This conclusion is supported by the fact that Defendants' counsel has no record of sending a letter to Plaintiff following the April 8, 2004 conference confirming that any method of identifying the remaining John Does had been investigated and had failed to yield results, and by the fact that Plaintiff submitted his proposed Amended Complaint in April 2004, shortly after the April 8 conference with Magistrate Judge Freeman.  Therefore, Plaintiff may amend his Complaint to add Captain Thompson, substitute Commissioner Kerik for DOCS, and substitute Correction Officers

11

McKissick, Von Braunsberg, and Bowden for John Does #1-3, and Warden Lasser for John Doe #4.  All claims against John Does #5 and #6 are dismissed.  *See supra* n.2

      B.  Futility of the Amendments

          1.  Exhaustion

Defendants argue that Plaintiff's proposed amendments pertaining to his deliberate indifference claims against Defendants McKissick and Von Braunsberg should be dismissed as futile because he failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e.

Although exhaustion is not jurisdictional, *Richardson v. Goord*, 347 F.3d 431, 434 (2d Cir. 2003), the PLRA requires a prisoner to exhaust his administrative remedies before bringing a section 1983 claim in federal court.  *See* 42 U.S.C. § 1997e(a); *McCoy v. Goord*, 255 F. Supp. 2d 233, 245 (S.D.N.Y. 2003) (finding on a motion for summary judgment that prisoner plaintiff failed to exhaust his administrative remedies).  However, nonexhaustion is an affirmative defense.  *See Jenkins v. Haubert*, 179 F.3d 19, 28-29 (2d Cir. 1999).  "Defendants bear the burden of proof and prisoner plaintiffs need not plead exhaustion with particularity."  *McCoy*, 255 F. Supp. 2d at 247-48; *see also Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 677 (4th Cir. 2005) (summarizing law of the majority of circuits, including the Second Circuit, which hold that exhaustion of administrative remedies under the PLRA is not a pleading requirement).

As an affirmative defense, nonexhaustion can be waived by the defendant in prisoner civil rights litigation.  *See Johnson v. Testman*, 380 F.3d 691, 695 (2d Cir. 2004) ("At least two other circuits have explicitly held that the PLRA's exhaustion requirement may be waived . . .

[w]e today join them and hold that this defense is waivable.").  When an affirmative defense is not raised in an answer, as required by Rule 8(c) of the Federal Rules of Civil Procedure, it is waived.  *See Bonilla v. Janovick*, No. 01 Civ. 3988, 2005 WL 61505, at \*1-2 (S.D.N.Y. Jan. 7, 2005) (exhaustion defense may be waived if not raised in defendant's answer).  The Second Circuit also has held that a defendant's reliance on the exhaustion defense may be estopped by defendant's conduct in the case.  *See Ziemba v. Wezner*, 366 F.3d 161, 163 (2d Cir. 2004) (adopting Fifth Circuit ruling that the affirmative defense of exhaustion is subject to estoppel).

Plaintiff filed his Complaint on January 25, 2002.  Defendants first formally raised the issue of exhaustion in their May 5, 2006 letter brief in opposition to Plaintiff's Motion to Amend. (*See* Letter from Liora Jacobi to the Court, May 6, 2006 at 7-8 ("Jacobi 5/6/06 Letter"))  "[A] defendant's failure to raise exhaustion of administrative remedies in response to [the] first few complaints [does] not constitute a waiver of that affirmative defense provided that the defense is timely raised in response to a subsequent amended complaint."  *Legal Aid Soc'y v. City of New York*, 114 F. Supp. 2d 204, 222 (S.D.N.Y. 2000) (quotation omitted) (finding nonexhaustion defense not waived because defendants timely raised it in their second amended answer).  Here, Defendants have timely raised the nonexhaustion defense in response to Plaintiff's proposed Amended Answer.  Therefore, it is not waived.

A complaint may be dismissed if plaintiff's failure to exhaust administrative remedies is apparent from the face of the complaint.  *See Anderson*, 407 F.3d at 682; *McCoy*, 255 F. Supp. 2d at 249, 251.  However, "[b]y characterizing non-exhaustion as an affirmative defense, the Second Circuit suggests that the issue of exhaustion is generally not amendable to resolution by way of a motion to dismiss."  *Nicholson v. Murphy*, No. 02 Civ. 1815, 2003 WL 22909876, at \*6

13

(D. Conn. Sept. 19, 2003); *see also McCoy*, 255 F. Supp. 2d at 249-50 ("[I]f, as is usually the case, it is not clear from the face of the complaint whether the plaintiff exhausted, a [motion to dismiss] is not the proper vehicle.").

The Second Circuit engages in a "three part inquiry" when a prisoner contests the assertion that he failed to exhaust his administrative remedies. *Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004). The court must ask: (1) whether administrative remedies were, in fact, "available" to the plaintiff; . . . (2) whether the defendant's actions estopped the plaintiff from exhausting his remedies; . . . , and (3) whether the defendants failed to preserve their non-exhaustion argument. *Id.* at 686-88. If administrative remedies were available and the defendant did not prevent plaintiff from exhausting them, the Court looks to see whether the plaintiff has alleged "special circumstances" which would have prevented compliance with the available administrative remedies. *Id.* at 689.

Here, Plaintiff alleges in his Amended Complaint that he "attempted to grieve" his causes of action within the prison system "by requesting, on a yellow interview slip, to see the grievance officer." (Am. Compl. ¶ 15) Plaintiff further alleges, however, that he "was never called." (*Id.*) When Plaintiff attempted to file a grievance after he had been moved to a new correctional facility, he was told that "he could not grieve [a policy] or an incident that occurred in another building" and that "there were [no directives] or pamphlet[s] that described the grievance procedure and how to appeal." (Am. Compl. ¶ 16) In response, Defendants merely state that "Plaintiff has failed to exhaust his grievance remedies." (Jacobi 5/6/06 Letter) At the July 19, 2006 conference, Defendants argued that Plaintiff admitted in his deposition that "he was aware there was a grievance procedure and that he did not file a grievance." (Tr. 40-41, July 19, 2006)

14

The Court cannot consider matters such as depositions which are outside the pleadings without converting, upon notice, the motion to one for summary judgment. *See* Fed. R. Civ. P. 12(b); *McCoy*, 255 F. Supp. 2d at 249-50. Such conversion has not been done here. Given that it is not clear from the face of the Complaint that Plaintiff failed to exhaust available administrative remedies and that the record is devoid of conclusive evidence on the issue, Plaintiff's deliberate indifference claims are not dismissed for failure to exhaust administrative remedies. *See Sereika v. Patel*, 411 F. Supp. 2d 397, 403 (S.D.N.Y. 2006) ("Where a plaintiff alleges that the defendant made misrepresentations that inhibited the plaintiff from participating in the grievance process, dismissal of the complaint for failure to exhaust is not appropriate."). Defendants may later make a motion for summary judgment and the Parties may submit pertinent materials supporting their respective positions on the question of exhaustion at the appropriate time.

### 2. Proposed Defendants Commissioner Kerik and Warden Lasser

Defendants argue that even if Plaintiff's Amended Complaint is not time-barred, he should not be permitted to substitute Kerik, as former DOCS Commissioner, for DOCS, and Lasser, as former warden of the unit where Howard was assaulted, for John Doe #4 because such substitutions would be futile. Howard asserts an Eighth Amendment claim against Kerik for failing to adequately train and supervise DOCS personnel (and the other individual Defendants) to prevent violence among "high classification" inmates. (Am. Compl. ¶¶ 88-92) Howard also asserts an Eighth Amendment claim against Lasser for allegedly implementing policies that allowed high classification inmates to be unsupervised with access to objects that may be turned into dangerous weapons. (Am. Compl. ¶¶ 83-87) These allegations exist in the original Complaint, but in the proposed Amended Complaint, Howard has substituted "Kerik" for

"DOCS" and "Lasser" for "Warden John Doe #4."

Defendants argue that Howard has failed to allege any personal involvement by these two individuals in the events of February 7, 1999 or in his subsequent medical care.  Therefore, Defendants contend, Howard should not be able to add them as Defendants to this action because the amendments would be futile.

"Where the proposed amended complaint would not withstand a motion to dismiss, the granting of leave to amend would be futile, and hence the motion [to amend] should be denied." *In re Winstar Commcn's v. Rouhana*, No. 01 CV 3014, 2006 WL 473885, at * 1 (S.D.N.Y. Feb. 27, 2006); *see also Nechis v. Oxford Health Plans, Inc*., 421 F.3d 96, 104 (2d Cir. 2005) (affirming district court's denial of motion to amend complaint where proposed amended claims failed on their merits).  In examining a motion to dismiss, the Court must "accept as true the factual allegations made in the complaint and draw all inferences in favor of the plaintiffs." *Grandon v. Merrill Lynch & Co.*, 147 F.3d 184, 188 (2d Cir. 1998).  "The court's function on a Rule 12(b)(6) motion is not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient."  *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985).  Dismissal is appropriate "only if there are no legal grounds upon which relief may be granted" consistent with the allegations.  *Virgilio v. City of New York*, 407 F.3d 105, 111 (2d Cir. 2005).

It is well settled in the Second Circuit that "'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (quoting *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)).  Moreover, "[t]he doctrine of respondeat superior is not applicable to Section

1983 cases . . . ."  *Hudson v. Greiner*, No. 99 Civ. 12339, 2000 WL 1838324, at *2 -3  (S.D.N.Y.

Dec. 13, 2000).

> The personal involvement of a supervisory defendant may be
> shown by evidence that:
>
> (1) the defendant participated directly in the alleged constitutional
> violation;
>
> (2) the defendant, after being informed of the violation through a
> report or appeal, failed to remedy the wrong;
>
> (3) the defendant created a policy or custom under which
> unconstitutional practices occurred, or allowed the continuance of
> such a policy or custom;
>
> (4) the defendant was grossly negligent in supervising subordinates
> who committed the wrongful acts; or
>
> (5) the defendant exhibited deliberate indifference to the rights of
> inmates by failing to act on information indicating that
> unconstitutional acts were occurring.

*Id*.  Conclusory statements that a supervisory defendant failed to properly supervise or train

prison personnel are insufficient to withstand a motion to dismiss.  *Colon*, 58 F. 3d at 873-74; *see*

*also Hudson*, 2000 WL 1838324, at *3 ("[Plaintiff's] complaint contains no allegations relating

to the personal involvement of [the individually named defendants] – either through direct

participation, maintenance of a policy or deliberate disregard for plaintiff's rights. [Plaintiff's]

conclusory statement that defendant failed to supervise the prison will not withstand the motion

to dismiss.").

      Here, Howard alleges that Kerik and Lasser maintained a policy, practice, or custom

which provided for under-supervision of high classification cell units and which permitted high

classification inmates access to dangerous objects that could be used to assault other inmates.

Howard asserts that Kerik and Lasser either set the policy, condoned it, or ignored it because the supervising Captains and Assistant Deputy Wardens who reported to them conducted daily tours of the housing unit and viewed unsupervised high classification inmates with dangerous objects. (Am. Compl. ¶¶ 40-44)  Furthermore, Howard asserts that Kerik set or condoned the classification system which placed the most dangerous inmates in one housing unit.  Therefore, according to Howard, Kerik knew that it was important to provide adequate supervision of high classification inmates to avoid assaults, but failed to change the staffing policy.  (Am. Comp. ¶¶ 44-46)  Finally, in Counts Nine, Ten, and Eleven, Howard alleges Kerik's and Lasser's failure to supervise or train.

Whether or not Howard's allegations are sufficient to survive a motion for summary judgment, they are sufficient at this stage, particularly because Howard is *pro se*.[3]  Therefore, Howard's Motion to Amend the Complaint to add claims against Kerik and Lasser is not futile, and accordingly is granted.

C.  Document Requests

In his March 1, 2006 and May 11, 2006 Letters, Plaintiff requests various documents. (Howard 3/1/06 Letter 2); Letter from Melvin Howard to the Court, May 11, 2006, at 1 ("Howard 5/11/06 Letter")  He requests transcripts from any conferences held by Judge Daniels before March 26, 2003.  There were three conferences held before that date – May 15, 2002, June 19,

---

[3]A *pro se* plaintiff's allegations are held to a "less stringent standard than formal pleadings drafted by lawyers . . . ."  *Haines v. Kerner*, 404 U.S. 519, 520 (1972).  *Pro se* plaintiffs are "'entitled to a far more generous reading of their pleadings than would otherwise be afforded to one who is represented by an attorney.'" *Dimps v. Dist. Council 37*, No. 01 Civ. 1735, 2002 WL 206992, at *2 (S.D.N.Y. Feb. 8, 2002) (quoting *Richardson v. Sec. Unit Employees Council 82*, No. 99 Civ. 1021E, 2001 WL 392089, at *1 (W.D.N.Y. Mar. 27, 2001)).

2002, and November 13, 2002.  There were no court reporters present at those conferences, and therefore, there are no transcripts.  Plaintiff's request for transcripts is denied as moot.

Plaintiff also requests a copy of a July 11, 2002 letter he to Judge Daniels.  (Howard 5/11/06 Letter)  The Court does not have a record of such a letter.  Plaintiff sent a letter to Judge Daniels dated July 4, 2002 informing the Court of a change of his address.  That letter was docketed July 11, 2002, and will be sent to Plaintiff.  Therefore, Plaintiff's request for the July 11, 2002 letter is also denied as moot.

### III.  Conclusion

For the reasons stated above, Plaintiff's Motion to Amend is DENIED in part and GRANTED in part.  Accordingly, it is hereby

ORDERED that within thirty days of this Order, Plaintiff shall amend his Complaint to add Captain Thompson as a Defendant.  It is further

ORDERED that Plaintiff's state law claims against all Defendants are dismissed with prejudice.  It is further

ORDERED that within thirty days of this Order, Plaintiff shall amend his Complaint to substitute former Commissioner Kerik as a Defendant in place of New York City Department of Corrections.  It is further

ORDERED that within thirty days of this Order, Plaintiff shall amend his Complaint to substitute Correction Officers McKissick, Von Braunsberg, and Bowden for John Does #1-3 and Warden Lasser for John Doe #4.  It is further

ORDERED that the claims against John Does #5 and #6 are dismissed with prejudice.  It is further

19

ORDERED that the Clerk of Court terminate this Motion (Doc. No. 68). It is further

ORDERED that the Clerk of Court docket Defendants' May 5, 2006 Letter to the Court

and Defendants' July 26, 2006 Letter to the Court.

SO ORDERED.

Dated:        August 30 , 2006
              New York, New York

                                        KENNETH M. KARAS
                                        UNITED STATES DISTRICT JUDGE

Service List
Melvin Howard
Upstate Correctional Facility
P.O. Box 2001
Malone, NY 12953
*Pro Se Plaintiff*

Liora Jacobi, Esq.
NYC Law Dept., Office of the Corporation Counsel
100 Church Street
Room 3-220
New York, NY 11201
Fax: 212-788-9776
*Counsel for Defendants*